### TERMINAL WAREHOUSE OF NEW JERSEY et al. v. UNITED STATES.
#### Civ. A. No. 10754.

United States District Court
D. New Jersey.

Jan. 8, 1952.

See also, 91 F.Supp. 327.

Nathan Baker, Hoboken, N. J., Cox & Walburg, by John A. Gleeson, Newark, N. J., for plaintiffs.

Grover C. Richman, Jr., U. S. Atty., Newark, N. J., Edward V. Ryan, Asst. U. S. Atty., Jersey City, N. J., for the Government.

MEANEY, District Judge.

Plaintiff brings this action against the United States, pursuant to the authority of 28 U.S.C.A. § 1346. The purpose of the suit is to recover for charges accrued against the United States on a contract of bailment in the amount of $2,448.67. In its answer the Government asserted a set-off and counterclaim in the same amount.

It is stipulated that the amount of charges claimed by plaintiffs is correct and is due and owing from the United States, subject, however, to any set-off which may exist in favor of the United States, and further that the warehouse charges set forth by the plaintiffs do not refer to storage charges for goods alleged to have been damaged as set forth in the counterclaim. At the trial the validity of a set-off in favor of the Government, in the amount of $9.09, was conceded.

## Findings of Fact

1. Plaintiff and the United States entered into a written contract for the storage of certain goods.

2. The merchandise in question consisted of boxes of candy bars. These boxes were in the plaintiff's warehouse from on or about August 15, 1944, until at least September 15, 1944.

.3. The boxes were placed on wooden platforms eight inches in height, on the ground floor of the warehouse, and were in that position on September 14, 1944.

4. On September 14, 1944, there was a hurricane which affected the area where plaintiffs' warehouse was located and in which the goods in question were stored.

5. As a result of the hurricane, sewer lines in the vicinity of the warehouse ceased to function and were unable to carry off the rain water that fell in that area.

6. In addition, these sewer lines backed up, allowing quantities of polluted water to flow over the area, including the ground floor of plaintiffs' warehouse, where it rose to a height of about two feet.

7. The goods in question were therefore lying in approximately one and a third feet of polluted water.

8. This flooding occurred during the night of September 14th, some time after six P.M., at which time Craig, the warehouse foreman, left for home.

9. Pumps were set early in the morning on September 15th, and by eleven P.M., that night, the water had been removed.

10. The boxes of candy bars had lain in the position described in finding number 7 for approximately twenty-four hours.

11. On the morning of September 16th the damaged boxes were removed to a place on the warehouse mezzanine.

12. The damage to the candy was caused by water flooding the warehouse by reason of the hurricane, and the resulting sewer overflow.

## Discussion

■ As the suit is based on a contract entered into by the United States, the federal law is applicable. See United States v. Standard Oil Co., 1947, 332 U.S. 301, 67 S.

Ct. 1604, 91 L.Ed. 2067; Clearfield Trust Co. v. United States, 1943, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838; Girard Trust Co. v. United States, 3 Cir., 1945, 149 F.2d 872.

█ The contract between the plaintiffs and the Government being one whereby the owner of goods stored them with a warehouseman, gives rise to the relation of bailor and bailee for hire. See 67 C.J., sec. 17, p. 452. Such a bailee is held to the exercise of ordinary care but may, by special contract, enlarge his legal responsibility. See Venice v. Frazier Davis Const. Co., D.C.D.Canal Zone, Balboa Division, 1949, 87 F.Supp. 475.

█ Here by contract it is provided that the bailee " * * * shall be liable for any loss or injury to the goods caused by his failure to exercise such care in regard to them as a reasonably careful owner of similar goods would exercise, but he shall not be liable for any loss or injury to the goods which could not have been avoided by the exercise of such care." This standard of care is identical with the provisions of section 21 of the Uniform Warehouse Receipts Act. See 3 U.L.A., sec. 21. This section states the common law rule as to the standard of care imposed upon a bailee for hire. See National Dock & Storage Warehouse Co. v. United States, D.C.D.Mass., 1927, 21 F.2d 755. Accordingly by contract the bailee is held to the exercise of ordinary care. See Rice Oil Co. v. Atlas Assur. Co., Limited, 9 Cir., 1939, 102 F.2d 561; 8 C.J. S., Bailments, § 27, p. 270.

██ On the bailor's proof of the fact of storage of the goods and of the fact of their damage or loss, a presumption of negligence is created which must be explained away by the bailee. See Commercial Molasses Corp. v. New York Tank Barge Co., 1941, 314 U.S. 104, 62 S.Ct. 156, 86 L.Ed. 89. However, under an ordinary bailment, the bailee is not responsible for damage caused by a hurricane. See Blair v. United States, 5 Cir., 1947, 164 F.2d 115. Therefore if the hurricane proximately caused the damage to the goods in question, the bailee will have successfully explained away the presumption of negligence.

## Conclusions of Law

█ The bailee has successfully explained away the presumption of negligence and is in no way responsible for the damage to the boxes of candy.

Judgment will be entered against the United States on the set-off and counterclaim and in favor of the plaintiffs.

Let an order be submitted in accord with these findings.